IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JEFFREY-GENE SCIBA,
Plaintiff,
v.
BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM
Defendant.

Civil Action No. 04-1011

**MEMORANDUM OPINION**

This matter is brought pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (2000), as amended, the Privacy Act, 5 U.S.C. § 552a(g)(1) (2000), and the Administrative Procedure Act, 5 U.S.C. § § 701 et seq. (2000). Currently before the Court is the summary judgment motion of the Board of Governors of the Federal Reserve System (the "Board"). Defendant's Motion for Summary Judgement and Memorandum of Points and Authorities in Support of Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Partial Summary Judgment ("Def.'s Mot.") [D.E. # 9]. The motion is opposed by the plaintiff's Court-Ordered Response Opposing: Defendant's Motion for Summary Judgment and Memorandum of Points and Authorities in Support of Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Partial Summary Judgment And Plaintiff's Motion for Summary Judgment ("Pl.'s Mot."). Based upon the parties' submissions and for the reasons set forth below, the Court grants the defendant's motion for summary judgment.

## I. Background

The facts in this case were discussed in detail in this Court's prior Memorandum Opinion

and thus will only be reviewed here to the extent necessary to resolve the pending motion. See Sciba v. Bd. of Governors of the Fed. Reserve Sys., No. 04-1011, 2005 WL 758260, at *1 (D.D.C. Apr. 1, 2005).

Earlier, on August 23, 2004, the plaintiff filed a motion for partial summary judgment. The defendant opposed the motion and filed its own cross-motion for summary judgment on October 8, 2004. On March 31, 2005, this Court denied the plaintiff's partial summary judgment motion but deferred ruling on the defendant's motion for summary judgment until after the plaintiff had an opportunity to respond properly to the defendant's FOIA Exemption 3(A) and Privacy Act arguments. The Court also advised the plaintiff, as a pro se party, that his failure to respond to all aspects of the defendant's motion could result in summary judgment being entered for the defendant. Sciba, 2005 WL 758260, at *3 n.9, 4. In response to the Court's Order, on April 26, 2005, the plaintiff filed a motion opposing the defendant's motion for summary judgment and again moved for summary judgment on the grounds that the defendant has failed to satisfy its burden of proving that it is entitled to prevail on its motion and engaged in bad faith through the use of conflicting affidavits and inconsistent proof. Pl.'s Mot. at 1. And the plaintiff again requested that the Court compel production by the defendant of the withheld suspicious activity reports ("SARs") and currency transaction reports ("CTRs"). Id. at 19. The defendant responded to the plaintiff's motion on May 25, 2005, reiterating the position taken in its earlier motion for summary judgment. Defendant's Opposition to Plaintiff's Court-Ordered Response Opposing Defendant's Motion for Summary Judgment ("Def.'s Opp'n").

## II. Standard of Review

The Court may grant summary judgment when there is no genuine issue of material fact

in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 321-23 (1986). In resolving a motion for summary judgment, all reasonable inferences that may be gleaned from the facts before the Court must be construed in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). In a FOIA case, to satisfy this standard, the "defending agency must prove that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the (FOIA's) inspection requirements." Perry v. Block, 684 F.2d 121, 126 (D.C. Cir. 1982) (internal quotation marks and citation omitted). When reviewing an agency's denial of a plaintiff's FOIA request, "the court shall determine the matter de novo, and . . . the burden is on the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B); see also Founding Church of Scientology of Wash., D.C., Inc. v. Nat'l Sec. Agency, 610 F.2d 824, 830 (D.C. Cir. 1979). In carrying its burden – that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the (FOIA's) inspection requirements – reliance on "agency affidavits is warranted if the affidavits describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981) (citations omitted); Ground Saucer Watch, Inc. v. Cent. Intelligence Agency, 692 F.2d 770, 771 (D.C. Cir. 1981); Hayden v. Nat'l Sec. Agency, 608 F.2d 1381, 1387 (D.C. Cir. 1979) (summary judgment in FOIA cases may be based on affidavits.) Unless the plaintiff "submits his own affidavit or other documentary evidence contradicting [the defendant's] assertions," the Court will accept as true

"any factual assertions contained in the affidavits and other attachments in support of the motion" for summary judgment. Butler v. Dep't of the Air Force, 888 F. Supp. 174, 178 (D.D.C. 1994) (citing Neal v. Kelly, 963 F.2d 453, 456 (D.C. Cir. 1992)).

## III. Analysis

### A. The Defendant's Motion for Summary Judgment

The defendant asserts that it is entitled to summary judgment because the two suspicious activity reports ("SARs") and four currency transaction reports ("CTRs") responsive to the plaintiff's April 2004 document requests are exempt from disclosure pursuant to Exemption 3(A) of the FOIA, in conjunction with 31 U.S.C. § 5319 (2000), and the access provisions of the Privacy Act. Def.'s Mot. at 1, 5, 16; Sciba, 2005 WL 758260, at *1.

As an initial matter, the Court notes that the plaintiff has again not responded directly to the defendant's FOIA Exemption 3(A) and Privacy Act arguments despite the Court's warning that failure to do so could result in summary judgement being entered for the defendant. See Order dated March 30, 2004. Instead, the plaintiff questions the validity, consistency, and good faith of the defendant's affidavits, thereby also questioning whether the defendant has satisfied the standard necessary for the award of summary judgment. Pl.'s Mot. at 1-2. But, the plaintiff has proffered no factual material that raises doubt about the veracity or adequacy of the affidavits. Id. at 1; Def.'s Opp'n at 5.[1] The plaintiff also reiterates his previous position that the

---

[1]The plaintiff questions the defendant's good faith in submitting affidavits that each claim different FOIA exemptions and that are inconsistent with the FOIA exemptions claimed in the defendant's motion for summary judgment. Pl.'s Mot. at 1-2. The plaintiff also questions the reliability of the defendant's affidavits, alleging that portions of the affidavits contain statements made without personal knowledge, thus inferring that their factual assertions may be inaccurate. Id. at 4. In order for the Court to call into question the accuracy of the factual information contained in the defendant's affidavits, the plaintiff must introduce factual evidence showing that the affidavits contain inaccuracies. Butler, 888 F. Supp. at 179. It is not enough for the plaintiff to raise mere suspicion

(continued...)

defendant is not entitled to summary judgment because "[t]he [g]overnment has not been consistent in its specification of which exemptions apply." Pl.'s Mot. at 3 (footnote omitted). However, while the defendant cited other exemptions as the bases for withholding the documents, namely, FOIA exemptions 6, 7(A), (C) and (D), the defendant indicated that because the documents were so clearly exempt from disclosure under FOIA Exemption 3(A) and 31 U.S.C. § 5319, that it would not provide briefing to the Court on those other exemptions, unless otherwise requested by the Court. Def.'s Mot. at 16-17 n.4; Sciba, 2005 WL 758260, at *1 n.3, *2 n.7. And the Court has not requested that the defendant elucidate the bases for the other FOIA Exemptions. Therefore, the plaintiff's argument that the defendant has failed to satisfy its burden of proof for summary judgment entitlement because it has inconsistently asserted exemptions, has no bearing on whether entry of summary judgment is appropriate.[2]

**1. FOIA Exemption 3(A)**

The Board asserts Exemption 3(A) of the FOIA in conjunction with 31 U.S.C. § 5319 as one of its bases for withholding the two SARs and four CTRs in their entirety from disclosure to the plaintiff. Def.'s Mot. at 16. Exemption 3(A) permits the withholding of information prohibited from disclosure by another statute if that other statute "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue." See 5 U.S.C. §

---

[1](...continued)
about the accuracy of the defendant's factual assertions. Steinberg v. United States Dep't of Justice, 179 F.R.D. 357, 360 (D.D.C. 1998) (finding that summary judgment is not defeated "with pure conjecture about the possible content of withheld information, raising 'some metaphysical doubt as to the material facts.'" (quoting Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).

[2]The plaintiff responded to the other exemptions asserted by the defendant, which the Court did not request, having ordered that Exemption 3(A) of the FOIA and the Privacy Act were the only arguments to which the plaintiff had to respond. See Court Order dated March 31, 2005 at 1. Consequently, the Court will not address the plaintiff's discussion of FOIA exemptions 6, 7(C) and 7(D).

552(b)(3); Smith v. United States Dep't of Justice, 251 F.3d 1047, 1048-49 (D.C. Cir. 2001). In such situations "the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within that statute's coverage." Goland v. Cent. Intelligence Agency, 607 F.2d 339, 350 (D.C. Cir. 1978) (footnote omitted); accord Ass'n of Retired R.R. Workers v. United States R.R. Ret. Bd., 830 F.2d 331, 335 (D.C. Cir. 1987).

"To qualify as a withholding provision, a statute must be 'the product of congressional appreciation of the dangers inherent in airing particular data' and must 'incorporate[] a formula whereby the administrator may determine precisely whether the disclosure in any instance would pose the hazard that Congress foresaw.'" Wis. Project on Nuclear Arms Control v. U.S. Dep't of Commerce, 317 F.3d 275, 280 (D.C. Cir. 2003) (alteration in original) (quoting Am. Jewish Cong. v. Kreps, 574 F.2d 624, 628-29 (D.C. Cir. 1978) (alteration in original)). "In short,'only explicit nondisclosure statutes that evidence a congressional determination that certain materials ought to be kept in confidence will be sufficient to qualify under the exemption.'" Id. (citing Irons and Sears v. Dann, 606 F.2d 1215, 1220 (D.C. Cir. 1979).

Here the defendant alleges that "an express statutory provision establishes that the documents are entirely 'exempt from disclosure' under [the] FOIA . . . ." Def.'s Mot. at 18. The withheld documents consist of two SARs, filed with the Board by financial institutions as required by 31 U.S.C. § 5318(g),[3] and four CTRs, filed with the Board by financial institutions as required by 31 U.S.C. § 5313.[4] Id. at 16 (citing Declaration of Susan M. Barnard ("Barnard

---

[3] 31 U.S.C. § 5318(g)(1) states that "[t]he Secretary may require any financial institution, and any director, officer, employee, or agent of any financial institution, to report any suspicious transaction relevant to a possible violation of law or regulation."

[4] 31 U.S.C. § 5313(a) provides, in part, that

(continued...)

Decl.") dated September 30, 2004) ¶¶ 3-6.[5] Therefore, the defendant opines that because section 5319 of title 31 states that "a report and records of reports are exempt from disclosure under section 552 of title 5,"[6] all reports filed under subchapter II[7] of title 31, which encompasses § § 5318 & 5318(g), are exempt from FOIA disclosure. Def.'s Mot. at 16 (citing 31 U.S.C. § 5319). As support for its position, the defendant quotes another member of this Court who stated that "[t]he absolute language of section 5319 eliminates any possibility of agency discretion . . . . Thus, the provision satisfies the requirement of Exemption 3 . . . . The exemption was therefore properly invoked to withhold the CTR from [p]laintiff." Id. at 20 (quoting Linn v. United States Dep't of Justice, No. 92-1406, 1995 WL 631847, at *30 (D.D.C. Aug. 22, 1995)); see Am. Jewish Cong., 574 F.2d at 628 (noting that "[s]ubsection (A), on its face, is too rigorous to

---

[4](...continued)

> [w]hen a domestic financial institution is involved in a transaction for the payment, receipt, or transfer of United States coins or currency (or other monetary instruments the Secretary of the Treasury prescribes), in an amount, denomination, or amount and denomination, or under circumstances the Secretary prescribes by regulation, the institution and any other participant in the transaction the Secretary may prescribe shall file a report on the transaction at the time and in the way the Secretary prescribes.

[5]Financial institutions must file SARs and CTRs with the appropriate federal law enforcement agencies and with the Department of the Treasury. 31 U.S.C. § 5318(g)(1) & 12 C.F.R. § 208.62; 31 U.S.C. § 5313(a) & 31 C.F.R. Part 103.

[6]31 U.S.C. § 5319 states in its entirety that

> [t]he Secretary of the Treasury shall make information in a report filed under this subchapter available to an agency, including any State financial institutions supervisory agency, United States intelligence agency or self-regulatory organization registered with the Securities and Exchange Commission or the Commodity Futures Trading Commission, upon request of the head of the agency or organization. The report shall be available for a purpose that is consistent with this subchapter. The Secretary may only require reports on the use of such information by any State financial institutions supervisory agency for other than supervisory purposes or by United States intelligence agencies. However, a report and records of reports are exempt from disclosure under section 552 of title 5."

31 U.S.C. § 5319.

[7]Title 31, chapter 53, Subchapter II, entitled Records and Reports on Monetary Instruments Transactions, contains sections 5311 through 5332. 31 U.S.C. § 5311.

tolerate any decision making on the administrative level.”).

In response, the plaintiff requests that the Court deny the defendant’s motion for summary judgment pursuant to Local Civil Rule 7(b), which states that:

> [w]ithin 11 days of the date of service or at such other time as the Court may direct, an opposing party shall serve and file a memorandum of points and authorities in opposition to the motion. If such a memorandum is not filed within the prescribed time, the Court may treat the motion as conceded.

Pl.’s Mot. at 1. However, dismissal on this basis is not warranted here because the defendant was not required to file any response to the plaintiff’s opposition within 11 days. Rather, this Court’s March 20, 2005 Order allowed the defendant 30 days to respond to the plaintiff’s court-ordered response. And the defendant responded within that 30 day period. Therefore, the plaintiff’s argument based on an alleged violation of Local Civil Rule 7(b) must be denied.

The plaintiff also requests that he be awarded partial summary judgment, and that the defendant be ordered to release the six documents. Pl.’s Mot. at 1. However, the Court has already denied the plaintiff’s motion for partial summary judgment in the previously issued Memorandum Opinion. Thus, the Court will consider now only the plaintiff’s arguments submitted in response to the defendant’s motion for summary judgement, as best as those arguments can be extracted from the plaintiff’s response.

The plaintiff contends that federal agencies have discretion to waive all FOIA exemptions that authorize nondisclosure of requested information. Pl’s. Mot. at 5. However, this assertion conflicts with the language of 5 U.S.C. § 552(b)(3), which codifies Exemption 3(A), and also conflicts with the purpose for which the FOIA was adopted. The plaintiff’s apparent position that all FOIA exemptions are discretionary belies the plain language of section 552(b)(3), which

exempts information from disclosure if a statute "requires that matters be withheld from the public in such a manner as to leave no discretion on the issue" of disclosure. 5 U.S.C. § 552(b)(3) (emphasis added). Exemption 3(A) explicitly precludes disclosure where another statute provides for "no discretion on the issue" of disclosure. Linn, 1995 WL 631847, at *29. The plaintiff's reasoning that all FOIA exemptions are discretionary, and therefore disclosure under Exemption 3(A) is also discretionary, is based on a misinterpretation and one-sided perspective of the intent underlying Congress's adoption of Exemption 3(A). See Pl.'s Mot. at 5 n.9. While Congress intended through the enactment of the FOIA "to permit access to official information long shielded unnecessarily from public view," it also appreciated the need " to protect certain equally important rights of privacy with respect to certain information in Government files . . ." that are "necessary for the very operation of our Government . . . ." Envtl. Prot. Agency v. Mink, 410 U.S. 73, 80 & n.6 (1973) (citation omitted), superceded by statute, Freedom of Information Act, Pub. L. No. 93-502, 88 Stat. 1561, 5 U.S.C. § 552(b)(1) (2002).

The plaintiff concludes that "[e]xemptions to the FOIA need not be claimed; they are discretionary and can be waived by the agency," quoting the Supreme Court's discussion of the Sunshine Act in Mink[8] as support for his position. Pl.'s Mot. at 5. However, Mink, like the other authorities the plaintiff cites, was interpreting exemptions that are not at issue in this case. These cases were interpreting exemptions 1, 4, 5, 7(A), 7(D), and 9, not Exemption 3(A). See Pl.'s Mot. At 5-6 (citing Mobil Oil Corp. v. Envtl. Prot. Agency, 879 F. 2d 698, 700 (9th Circ. 1989) (exemptions 5 and 7(A)); Church of Scientology of Cal. v. U.S. Dep't of Justice, 410

---

[8] "Subsection (b) . . . represents the congressional determination of the types of information that the Executive Branch must have the option to keep confidential, if it so chooses." Mink, 410 U.S. at 80.

F. Supp. 1297, 1300 (C.D. Cal. 1996) (exemption 7(D)); Pennzoil v. Fed. Power Comm'n, 534 F. 2d 627, 630 (1976) (exemptions 4 and 9); Mink, 410 U.S. at 80 (exemptions 1 and 5). And despite the Court's requirement that the plaintiff respond to the defendant's Exemption 3(A) argument to the exclusion of other FOIA exemptions listed in the defendant's affidavits and answer to the complaint, the plaintiff has again failed to do so. Sciba, 2005 WL 758260, at *3 n.8. Instead, the plaintiff attempts to convince the Court that all nine FOIA exemptions "are discretionary and can be waived by the agency." Pl.'s Mot. at 5.

However, Congress drafted Exemption 3(A) with the intent of excluding from disclosure information covered by other statutes containing specific language limiting agency discretion. See Irons and Sears, 606 F.2d at 1220 (noting that Exemption 3(A) provides "that only explicit nondisclosure statutes that evidence a congressional determination that certain materials ought to be kept in confidence will be sufficient to qualify under the exemption."). Moreover, Exemption 3 is unique among the FOIA exemptions "in that its applicability depends less on the detailed factual contents of specific documents" but rather depends solely on "the existence of a relevant statute and the inclusion of withheld material within the statute's coverage." Goland, 607 F.2d at 350 (footnote omitted). Therefore, Exemption 3(A) is, as Congress intended it to be, an exception to the policy of broad disclosure. Cf. Irons and Sears, 606 F.2d at 1219-20 (describing Congress's effort to legislatively overrule the Supreme Court's decision in Adm'r Fed. Aviation Admin. v. Robertson, 422 U.S. 255 (1975) with the enactment of the Sunshine Act, in which Congress narrowed the scope of Exemption 3 so as to limit its applicability only to explicit

nondisclosure statutes).[9]

Here, the Board correctly asserts Exemption 3(A) of the FOIA as justification for nondisclosure of the withheld documents because the two SARs and four CTRs fall within the scope of 31 U.S.C. § 5319. In accordance with the requirements of Exemption 3(A), section 5319 is a separate statute from the FOIA that explicitly "requires that [certain] matters be withheld from the public in such a manner as to leave no discretion on the issue," 5 U.S.C. § 552(b)(3), stating that "a report and records of reports are exempt from disclosure under section 552 of Title 5." 31 U.S.C. § 5319. "The absolute language of section 5319 eliminates any possibility of agency discretion . . . [t]hus satisf[ying] the requirement of Exemption 3[(A)] that a statutorily mandated privilege must . . . leave no discretion to the agency . . . for withholding." Linn, 1995 WL 631847, at *30.

Nonetheless, the plaintiff objects to the defendant's interpretation of 31 U.S.C. § 5319 as an adequate basis for nondisclosure of the responsive records under Exemption 3(A) of the FOIA, arguing that section 5319 does not contain explicit language to the effect that the agency clearly cannot disclose the requested records. Pl.'s Mot. at 8. The plaintiff asserts that an Exemption 3(A) qualified statute must contain "exempting purpose" language and "be explicit in what must be withheld." Id. at 8-9. And, according to the plaintiff, because section 5319 contained neither, Congress evidenced its intention to make disclosure of records subject to section 5319 discretionary. Id. However, the plaintiff does not cite any cases in support of either proposition as applied to section 5319, and ignores cases that have reached the contrary

[9]Congress declared in the Sunshine Act of 1976 that "the policy of the United States [is] that the public is entitled to the fullest practicable information regarding the decisionmaking processes of the Federal Government" and "the purpose of th[e] Act [is] to provide the public with such information . . ." 5 U.S.C. § 552b (2004).

conclusion.[10] Id. A fair reading of section 5319 leads to the conclusion that it explicitly exempts financial institution reports from public disclosure under the FOIA. The plaintiff's position fails because he misconstrues the explicitness requirement of an Exemption 3(A) qualifying statute, interpreting the term "specifically" in the statute as requiring precise enumeration of the records that are exempt from disclosure in order for an agency to refuse their production.[11] Pl.'s Mot. at 9.

Section 5319 covers financial institution reports filed with the Secretary of the Treasury under Subchapter II of the Bank Secrecy Act, 31 U.S.C. §§ 5311 et seq. (2000). 31 U.S.C. § 5319. Subchapter II encompasses sections 5311 through 5332 of the Act and therefore covers reports filed under sections 5318 (the SARs)[12] and 5313 (the CTRs).[14] 31 U.S.C. § 5311. This Court recently held that CTRs are properly not produced under Exemption 3(A), in conjunction with 31 U.S.C. § 5319, because section 5319 specifically prohibits disclosure of "a report and records of reports . . . under section 552 of title 5 [the FOIA]." Maydak, 2004 U.S. Dist. LEXIS 27538, at *12 (quoting 31 U.S.C. § 5319). This same conclusion extends to SARs because the

[10]Cases holding that section 5319 is an Exemption 3(A) qualifying statute include Maydak v. United States Dep't of Justice, No. 00-0562, 2004 U.S. Dist. LEXIS 27538 at *12 (D.D.C. Aug. 23, 2004) (Walton, J.); Linn, 1995 WL 631847, at *30; Vosburgh v. Internal Revenue Serv., No. 93-1493-MA, 1994 WL 564699, at *4 (D.Or. July 5, 1994); and Small v. Internal Revenue Serv., 820 F. Supp. 163, 166 (D.N.J. 1992).

[11]Exemption 3(A) states that information exempt from disclosure under the FOIA must be "specifically exempted from disclosure by statute." 5 U.S.C. § 552(b)(3).

[12]Section 5318 authorizes the Secretary of the Treasury ("Secretary") to require the filing of SARs, 31 U.S.C. § 5318(g)(1), and the Secretary has promulgated regulations "that require SARS to be filed with the appropriate Federal law enforcement agencies and the Department of the Treasury." 12 C.F.R. § 208.62(c) (2004).

[14]Section 5313 authorizes the Secretary to require the filing of CTRs, 31 U.S.C. § 5313(a), and the Secretary has promulgated regulations that require financial institutions to file with the Secretary "a report of each deposit, withdrawal, exchange of currency or other payment or transfer, by, through, or to such financial institution which involves a transaction in currency of more than $10,000." 31 C.F.R. 103.22(b)(1) (2004).

Secretary is granted authority, pursuant to section 5318(g)(1), to require financial institutions to file SARs to report perceived or potential violations of federal law, authority the Secretary has exercised by adopting 12 C.F.R. § 208.62 (2004), thereby exempting them from disclosure under the FOIA as a result of the non-discretionary language of § 5319. Accordingly, the defendant lawfully refused to disclose both the SARs and CTRs in accordance with FOIA Exemption 3(A) in conjunction with 31 U.S.C. § 5319.

**2. The Privacy Act**

In addition to his FOIA requests, the plaintiff also requested access to the documents pursuant to the Privacy Act. The Privacy Act provides, in part:

(d) Access to records.--Each agency that maintains a system of records shall--

> (1) upon request by any individual to gain access to his record or to any information pertaining to him which is contained in the system, permit him and upon his request, a person of his own choosing to accompany him, to review the record and have a copy made of all or any portion thereof in a form comprehensible to him, except that the agency may require the individual to furnish a written statement authorizing discussion of that individual's record in the accompanying person's presence;

5 U.S.C. § 552a(d)(1). Thus, the Privacy Act provides a right of access by any person to information pertaining to him that is contained in an agency's system of records. Pursuant to subsections (j) and (k) of the Privacy Act, an agency may promulgate rules exempting identified systems of records from the access provisions of the Act. 5 U.S.C. §§ 552a(j) and (k). Specifically, subsection (k)(2) permits an agency to exempt from disclosure any system of records that contains "investigatory material compiled for law enforcement purposes." 5 U.S.C.

§ 552a(k)(2). Here, the Board contends that "[b]ecause [the information requested by the plaintiff] contains investigatory material compiled for law enforcement purposes, the Board's regulations specifically exempt all information in BGFRS-21[15] from the access requirements of the Privacy Act." Def.'s Mot. at 22 (citing 12 C.F.R. § 261a.13(b)(7) (2004); Def.'s Mot. at Exhibit ("Ex.") 4 (Declaration of Elaine M. Boutilier dated October 6, 2004 ("Boutilier Decl.")) ¶ 19 and Ex. C (document listing Systems of Records of the Federal Reserve System).[16] The Board concludes that "[b]ecause [it] properly exempted BGFRS-21 from the Privacy Act, the plaintiff has no Privacy Act right of access to information in that system of records . . . ." Def.'s Mot. at 22.

On the other hand, the plaintiff argues that the defendant has failed to prove that the SARs and CTRs responsive to his requests are exempt from disclosure under the Privacy Act because it has not established through the two part Pratt test that (1) "the agency's investigatory activities that give rise to the documents sought must be related to the enforcement of federal laws or to the maintenance of national security;" and (2) "the nexus between the investigation and one of the agency's law enforcement duties must be based on information sufficient to support at least a colorable claim of its rationality." Pl.'s Mot. at 17-18 (citing Doe v. FBI., 936 F.2d 1346, 1353-1354 (D.C. Cir. 1991) (quoting Pratt v. Webster, 673 F.2d 408, 420-21 (D.C.

---

[15]BGFRS-21, or the FRB Supervisory Tracking and Reference System, " is a database, jointly owned by the Board and other federal agencies that contains computerized records of SARs and CTRs prepared by financial institutions and used by federal agencies, including the Board, for law enforcement purposes." Sciba, 2005 WL 758260, at *1 n.1 (citing Def.'s Mot. at 3, which cites Barnard Decl. ¶¶ 3-6)..

[16]Elaine M. Boutilier has been an attorney with the Board since 1983. Boutilier Decl. ¶ 1. She is responsible for supervising the processing of requests for information that are received under the FOIA and the Privacy Act, and for providing legal advice on issues related to the FOIA and the Privacy Act. Id. ¶ 3.

Cir. 1982)). The plaintiff further notes that an agency does not satisfy the Pratt test by "'merely engaging in general monitoring of private individuals' activities; rather, the agency must demonstrate a connection between its investigation and the existence of a 'possible security risk or violation of federal law.'" Id. at 18 (quoting Doe v. FBI, 936 F.2d at 1353). The plaintiff concludes that "[t]he Federal Reserve Board's mere 'monitoring' of private individuals disqualifies the records from this exemption." Id.

However, despite the plaintiff's arguments to the contrary, the Board has clearly shown that the BGFRS-21 database contains investigatory material compiled for law enforcement purposes and is therefore exempt from disclosure under section (k)(2) of the Privacy Act. Specifically, included in the Board's systems of records is the BGFRS-21 system of records, which is maintained and located in the Division of Banking Supervision and Regulation. Def.'s Mot., Boutilier Decl. ¶¶ 10, 19. The BGFRS-21 database contains computerized records of SARs and CTRs maintained by the Financial Crimes Enforcement Network of the United States Department of the Treasury. Id. ¶ 19. "The SAR[s] contain[] information identifying the financial institution involved, the suspected person, the type of suspected activity, and any witnesses." Id. Moreover, the Board is a law enforcement agency that monitors compliance by financial institutions, and their officers, directors, and employees, with numerous federal statutes and regulations including anti-money laundering statutes and the Bank Secrecy Act. Def.'s Mot. at 21 (citing 12 U.S.C. §§ 248(a), 1818, 1820(d) and 1844) (2000)). The Board and Reserve Banks use BGFRS-21 to not only monitor banks' compliance with these laws and regulations, but also to prevent, detect, and prosecute crimes and violations of laws involving financial institutions, either through regulatory enforcement action or through referrals to State, federal or

foreign law enforcement agencies. Id. at 21, Ex. 3 (Barnard Decl.) ¶¶ 3, 6; Boutilier Decl. Ex. C at 8-203. Thus, the BGFRS-21 database is the Board's "central . . . repository for investigatory or enforcement information related to the Board's responsibility to examine and supervise entities regulated by the Board." Def.'s Opp'n at 5; Boutilier Decl. Ex. C at 8-203. Thus, the plaintiff's contention that the "Board's mere 'monitoring' of private individuals disqualifies the records" from section (k)(2) of the Privacy Act is not supported by any evidence or legal authority to the contrary. Pl.'s Mot. at 18. And, in order to cause the Court to question the factual basis of the defendant's arguments, the plaintiff must submit an "affidavit or other documentary evidence contradicting such assertions." Butler, 888 F. Supp. at 178 (citing Neal, 963 F.2d at 456). However, the plaintiff has not supported his argument that the SARs and CTRs were not compiled for valid law enforcement purposes with any factual material. Therefore, the Court will not question the veracity of the evidence submitted in the defendant's affidavits, nor can it ignore the clear mandates of section (k)(2) of the Privacy Act. Accordingly, this Court concludes that the BGFRS-21 system of records and the SARs and CTRs assembled and maintained within that record system contain information compiled for valid law enforcement purposes. Thus, the defendant properly withheld the SARs and CTRs from disclosure to the plaintiff under the Privacy Act.

Finally, the plaintiff contends that the Board would not "breach any confidentiality under the Privacy Act if the documents are released" because he "has a court order . . . from a court in Texas entitling him to all 'writs and processes as may be necessary in the enforcement and collection of his judgment.'" Pl.'s Mot. at 19. And the plaintiff points out that this Court must afford "full faith and credit" to the Texas court judgment, which entitles him to obtain the six

documents the defendant has refused to release. Id. at 19-20. However, the Texas court also ruled that the "[p]laintiff's request for an order directing the Federal Reserve to conduct a trace-of-funds search is denied, being beyond the jurisdiction of th[e] court." Id. at 2. Thus, because the Texas court did not have jurisdiction or authority to grant the plaintiff entitlement to documents in the Board's database, the plaintiff's reliance on the Texas court judgment as justification for release of the SARs and CTRs is clearly misplaced.

## IV. Conclusion

For the foregoing reasons, the Court grants the defendant's motion for summary judgment.

______**SO ORDERED** on this 2nd day of November, 2005.

REGGIE B. WALTON
United States District Judge